IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAMADOU AMIROU DIALLO,

    Petitioner,

v.

                                                        No. 2:26-cv-00066-MLG-JHR

DORA OROZCO, Warden Otero
County Processing Center, et al.

    Respondents.

**MEMORANDUM OPINION AND ORDER GRANTING
PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on Petitioner Mamadou Amirou Diallo's Petition for Writ of Habeas Corpus ("Petition") filed on January 14, 2026. Doc. 1. For the reasons stated below, the Court grants the Petition and orders Respondents immediately release Diallo.[1]

**I.    BACKGROUND**

The facts in this case are undisputed. *See* Doc. 7-1 at 2; Doc. 8 at 1. Diallo is a 20-year-old Guinean citizen who entered the United States without admission or inspection. Doc. 1 at 1 ¶ 1; Doc. 5 at 2. On September 13, 2023, Diallo was "encountered by Respondents" and charged with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) (codified as 8

---

[1] This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

U.S.C. § 1182(a)(6)(A)(i)).[2] Doc. 5 at 2. Respondents released Diallo in 2023 "on his own recognizance pending removal proceedings." *Id.* On December 2, 2025, Diallo attended an Immigration and Customs Enforcement ("ICE") "check-in pursuant to the conditions of his prior release." *Id.* Petitioner was taken into custody pending the conclusion of removal proceedings. There is no evidence in the record that Diallo committed a crime or otherwise violated any conditions of his release. *See generally* Docket. An Immigration Judge ("IJ") denied subsequently denied Diallo bond on jurisdictional grounds. Doc. 1. at 1, 3 ¶¶ 1, 17.[3]

Diallo filed the instant Petition requesting immediate release or, in the alternative, he should be released on bond pursuant to 8 U.S.C. § 1226. Doc. 1 at 3, 3 ¶¶ 2,4. Respondents U.S. Department of Homeland Security ("DHS"), ICE, and the United States Attorney General filed a Response to the Petition on February 5, 2026. Doc. 5. They assert that Diallo's detention accords with § 1225(b)(2)(A) per the Bureau of Immigration Affairs' ("BIA") recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[4] Doc. 5 at 1-2, 12-16. Diallo did not file a reply.[5]

---

[2] This Opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). Under § 1182(a)(6)(A)(i), a "[noncitizen] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[3] At the time Diallo filed the instant Petition, he had pending applications for asylum and Special Immigrant Juvenile Status. Doc. 1 at 1, 3 ¶¶ 1, 15.

[4] This is a recent BIA precedential decision holding that section 235(b)(2)(A) of the INA, codified as § 1225(b)(2)(A), precludes IJs from granting bond requests to people who are present in the United States unlawfully. *See Matter of Yajure Hurtado*, 29 I&N Dec. at 218.

[5] Diallo filed a Motion for Summary Judgment, Doc. 7, arguing his detention is governed by § 1226 and for his immediate release, or in the alternative, a bond hearing. This is the same relief requested in Diallo's Petition. *Compare* Doc. 1 at 3-4 *with* Doc. 7-1 at 2-4. Because the Court is granting the Petition, Diallo's Motion for Summary Judgment is deemed moot.

## II.     DISCUSSION

### A.     Applicable Legal Principles

Section 1226 permits the release of a noncitizen from custody pending a removability determination "on "conditional parole," which is synonymous with "release on recognizance." *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (noting the Government "use[s] the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); § 1226(a)(2)(B).[6] In making a determination regarding detention, an immigration officer must assess whether "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Obviously, if a person is released on conditional parole, the immigration officer has found neither consideration appliable. Circumstances can change, however, and the Government may revoke release status at any time. But it must do so in accordance with Fifth Amendment considerations. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce a[][noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *4 (S.D.N.Y. July 13, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (recognizing that while ICE has discretionary authority to detain noncitizens under § 1226, the "question is whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is

---

[6] In comparison, a noncitizen detained under Section 1225(b) may only be released if he is paroled "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A) (discussing the temporary admission of "any [noncitizen] applying for admission"). This "express exception to detention implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." *Id.* (emphasis in the original).

3

no dispute that it is."). As numerous other courts have explained—including many in this district—noncitizens released from immigration detention have a protectable liberty interest in remaining out of custody. *Garcia Domingo*, 806 F. Supp. 3d at 1252; *Danierov v. Noem*, No. 2:25-cv-01215-KG-KRS, 2025 WL 3653925, at *2 (D.N.M. Dec. 17, 2025); *Ramirez v. Noem*, No. 2:26-cv-00063-SMD-GJF, 2026 WL 381869, at *6–7 (D.N.M. Feb. 11, 2026); *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) (collecting cases from the Northern District of California), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025);*Destino v. FCI Berlin, Warden*, No. 1:25-cv-374-SE-AJ, 2025 WL 4010424, at *11 (D.N.H. Dec. 24, 2025), *appeal filed sub nom.*, *Destino v. Ackley*, No. 26-1181 (1st Cir. Feb. 20, 2026); *O.F.C. v. Almodovar*, No. 25-cv-9816 (LJL), 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026); *Singh v. Stevens*, No. 3:26-CV-133, 2026 WL 456489, at *7 (N.D. Ohio Feb. 18, 2026).

## B.   Diallo's Parole and Re-Detention under § 1226

It is undisputed that Diallo was released on his own recognizance. Doc. 5 at 2. So, the Court must logically conclude that Diallo was released pursuant to § 1226(a)(2)[7] and that an immigration officer made an initial determination that Diallo was neither a danger to the community nor a flight risk. *See* 8 C.F.R. § 236.1(c)(8). The resulting question is whether, given that finding, Diallo's re-

---

[7] Respondents offer no documentary evidence that Diallo was released in 2023 pursuant to § 1182(d)(5)(A)—the only exception to § 1225 mandatory detention. *See generally* Doc. 5; *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) ("Such a release on recognizance is not 'humanitarian' or 'public benefit' 'parole into the United States' under §§ 1225 and 1182(d)(5)(A), but rather a form of 'conditional parole' from detention, authorized under § 1226."); *Goorakani v. Lyons*, Nos. 25 Civ. 9456 (DEH), 25 Civ. 9551 (DEH), 25 Civ. 9592 (DEH), 25 Civ. 9952 (DEH), 2025 WL 3632896, at *7 n.8 (S.D.N.Y. Dec. 15, 2025) (finding a petitioner's release on recognizance was pursuant to § 1226 despite the lack of documentary evidence provided by the Government). Even more telling, Respondents do not assert that Diallo is subject to § 1225(b)(2)(a) because he was initially detained under this statute. *See* Doc. 5 at 2, 12-17.

detention constitutes a violation of the Fifth Amendment's Due Process Clause.[8] Doc. 1 at 1, 3 ¶¶ 1, 1.

C.    Diallo's Fifth Amendment Procedural Due Process Claim

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." Determining whether a violation of that constitutional right has occurred turns on two independent inquiries: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution." *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1251-52 (D.N.M. 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). The Court addresses each in turn.

   a.  **Diallo has a protected interest in being free from DHS custody**

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [he] will be re-detained only if [he] violates the conditions of [his] release." *Pablo Sequen*, 806 F. Supp. 3d at 1082 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (ruling the Due Process Clause protects a liberty interest in parole)). Accordingly,

---

[8] A bond hearing before an IJ under § 1226(a) occurs after a noncitizen has already been detained by DHS. § 1226(a)(1)-(2); 8 C.F.R.§ 236.1(d). This type of bond hearing therefore cannot prevent a deprivation of liberty that the Fifth Amendment seeks to protect as the noncitizen is already in custody. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025).

5

"[c]onditional release 'is valuable and must be seen as within the protection of the [Due Process Clause].'" *Id.* (alteration in original) (quoting *Morrissey*, 408 U.S. at 482). The threshold inquiry of the Due Process analysis is satisfied as Diallo has "the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

### b. Due process requires Diallo receive a hearing prior to any re-detention

Having resolved the first inquiry in Diallo's favor, the Court next determines what process is constitutionally sufficient to protect the implicated liberty interest. In making that assessment, the Court employs the familiar balancing test set out in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, (1976). Each is addressed in turn.

The first *Mathews* factor concerns the interest implicated through the official action. *Id.* Freedom from government custody—including "detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. That interest remains unvanquished notwithstanding the government's considerable discretion in pursuing detention of noncitizens. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Garcia Domingo*, 806 F. Supp. 3d at 1252; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him

a liberty interest which is entitled to the full protections of the due process clause."). That Diallo was re-detained after a period of conditional parole does not alter the analysis. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482) (collecting cases). In short, Diallo met his obligation to demonstrate that he has an established private interest in remaining out of custody.

The second *Mathews* factor addresses "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335. Little legal analysis is required to resolve this inquiry as Diallo is in custody; he has already been deprived of his recognized liberty interest. Respondents' filings provide no persuasive grounds legally justifying their conduct. *See* Doc. 5. They do not explain why Diallo was re-detained in December 2025. Doc. 1 at 1 ¶ 2. They provide no evidence that Diallo now poses a danger to the community or is a flight risk. Instead, Respondents assert § 1225 authorizes Diallo's continued detention. Doc. 5 at 1-2, 12-16. This Court has repeatedly rejected the contention that similarly situated noncitizens may be detained without a bond hearing. *See Cortez-Gonzalez v. Noem*, No. 2:25-cv-00985-MLG-KK, 2025 WL 3485771, at *4 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *3-4 (D.N.M. Dec. 17, 2025). Accordingly, § 1225 is inapplicable.

Moreover, in the civil immigration context, there are two bases for detention: to prevent flight or to protect the community against danger. *Pablo Sequen*, 806 F. Supp. 3d 1089 (citing *Zadvydas*, 533 U.S. at 690). Those two considerations remain relevant even though Diallo was re-

7

detained following a period of conditional parole. Thus, there must be "'a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight' before such revocation." *Cuya-Priale v. Castro*, No. 2:25-cv-01166-KG-DLM, 2025 WL 3564145, at *2 (D.N.M. Dec. 12, 2025) (quoting *Y.M.M. v. Wamsley*, No. 2:25-cv-02075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025)). Again, there is no evidence in the record that such a change took place. Respondents do not argue otherwise. *See* Doc. 5. Simply put, the Court can discern no basis for Diallo's re-detention. The Court therefore finds the second *Mathews* factor weighs in Diallo's favor because a pre-detention hearing where the flight risk and danger to the community factors are considered will ensure any future detention has a lawful basis.

The third *Mathews* factor also weighs in Diallo's favor. The Government has an interest in detaining noncitizens during the pendency of removal proceedings to ensure they do not abscond or commit crimes. *See* § 1226(a)(1), (c); 8 C.F.R. § 236.1(c)(8). Respondents, however, previously determined that Diallo was neither a flight risk nor a danger to his community. *See* Doc. 5 at 2; § 236.1(c)(8). And again, this Court has not been provided any evidence showing that circumstances have changed. Whatever interest the government may have in this matter, and it has not articulated any, is outweighed by Diallo's protected liberty interest. Indeed, the costs and resources for Respondents to provide a pre-detention hearing are minimal. *See Garcia Domingo*, 806 F. Supp. 3d at 1252; *Pablo Sequen*, 806 F. Supp. 3d at 1090 ("Because custody hearings in immigration [proceedings] 'are routine and impose a minimal cost, . . . it is likely that the cost to the government of detaining [a noncitizen] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing.'") (quoting *Pinchi*, 792 F. Supp. 3d at 1036).

Because the *Mathews* factors favor Diallo, due process requires Diallo receive a hearing before an IJ prior to re-detention.[9] There is no evidence in the record that Diallo received the due process owed to him under the Fifth Amendment. *See* Docs. 1, 5. Therefore, the requested writ of habeas corpus for his immediate release is granted.

### III.    CONCLUSION

Diallo shall be released within twenty-four hours of the entry of this Order. Diallo shall be released with all identification documentation that he possessed on his person when detained by Respondents in December 2025 along with a copy of this Order.

Diallo may not be re-detained without a pre-detention hearing before a neutral IJ. Diallo shall not be re-detained unless Respondents demonstrate by clear and convincing evidence at a pre-detention hearing that Diallo is a flight risk or poses a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms. Diallo shall receive at least seven (7) days' notice before the pre-detention hearing takes place.

---

[9] At the bond hearing, Respondents must demonstrate to a neutral decisionmaker by clear and convincing evidence that Diallo is a flight risk or a danger to the community. Respondents will bear the burden because they violated Diallo's Fifth Amendment Due Process rights, and initiated his re-detention. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1242-46 (D.N.M. 2025) (ruling the burden of proof shifts to the government when a noncitizen has been unlawfully detained in violation of the Fifth Amendment Due Process Clause); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *15 (E.D. Cal. Oct. 9, 2025) (finding the government is required to bear the burden for justifying re-detention because the government initiates re-detention proceedings after previously determining the noncitizen is not a flight risk or danger); *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040, at *4 (E.D.N.Y. Feb. 6, 2026) (concluding while a petitioner has the burden of proof regarding a petition for habeas relief, "once a custodial determination is required, it is Respondents who 'bear the burden of proving the need for continued detention.'") (quoting *Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024))).

Respondents are further ordered to file a status report within three (3) days of this Order to certify compliance. The status report shall provide the date and location in which Diallo was released from custody.

Diallo's Motion for Summary Judgment (Doc. 7) is moot.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA